UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.

JIMMY L. HARRIS, JR.,
        Defendant.

REPORT AND
RECOMMENDATION

23-CR-6089-CJS-MJP-1

---

## APPEARANCES

| | |
|---|---|
| For the United States: | Sean C. Eldridge<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>100 State Street Suite 500<br>Rochester, NY 14614 |
| For the Defendant: | Fonda Dawn Kubiak<br>Assistant Federal Public Defender<br>300 Pearl Street Suite 200<br>Buffalo, NY 14202 |

## INTRODUCTION

**Pedersen, M.J.** In an indictment filed on April 27, 2023 ("Indictment"), the Grand Jury charged defendant Jimmy L. Harris, Jr. ("Defendant") with one count of "Felon in Possession of Firearm and Ammunition" (Indictment, Apr. 27, 2023, ECF No. 22.)

On June 30, 2023, Defendant filed an omnibus motion. (ECF No. 26.) The government submitted a response to Defendant's omnibus motion on July 19, 2023. (ECF No. 30.) On July 26, 2023 and August 23, 2023, the undersigned heard oral argument on the omnibus motion. The undersigned issued a decision on all the issues raised in Defendant's omnibus motion, except that he reserved on the following:

Defendant's motion to suppress tangible evidence; and

Defendant's request for a *Franks* hearing.

1

(Omnibus Order, July 26, 2023, ECF No. 34.)

After hearing oral argument and testimony from Rochester Police Department Officer Eichas and reviewing all motion papers, the undersigned recommends that the District Court deny Defendant's motion to the extent it seeks to suppress tangible evidence and seeks a *Franks* hearing.

## STANDARD OF LAW

On April 27, 2023, the Honorable Charles J. Siragusa referred this case to the undersigned to address, in relevant part, all pre-trial matters, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). (Text Order of Referral, April 27, 2023, ECF No. 24.)

## DISCUSSION

For this Report and Recommendation, the undersigned has reviewed and considered the following: the affidavit filed in support of the complaint (ECF No. 1); Defendant's omnibus motion (ECF No. 26); the government's response in opposition (ECF No. 30); proffers made at oral argument, held before the undersigned on July 26, 2023; proffers made at an additional oral argument held on August 23, 2023; and the testimony of Officer Eichas on September 27, 2023. The undersigned finds the officer's testimony is credible.

### *Findings of Fact Regarding Defendant's Standing.*

On August 2, 2022, Rochester Police Department Officer Eichas observed a blue Nissan Sentra with the driver as the only occupant of that vehicle. (Van Alstyne Aff. ¶ 6, ECF No. 1.) The vehicle was the subject of a Monroe Crime Analysis Center officer safety bulletin, which advised that the vehicle was suspected of being involved in two recent shootings in Rochester, that Defendant was suspected to be driving the Nissan, that

Defendant was suspected of possessing a pistol that he kept in a black "Gucci"[1] pouch, and that Defendant lacked a valid driver's license. (*Id.*) Officer Eichas observed Defendant park the Nissan at a store and recognized Defendant from the photograph of him contained in the safety bulletin. (Testimony of Officer Shawn Eichas, Sept. 27, 2023.) He requested assistance from other officers to make a traffic stop. (Van Alstyne Aff. ¶ 6, ECF No. 1.)

Upon leaving the store, Defendant got into the Nissan, rolled down the windows, and then got out of the car and began wiping down the front passenger tire. (Testimony of Officer Shawn Eichas, Sept. 27, 2023.) Officer Eichas had been observing Defendant from down the road and once Defendant got out of the Nissan, Officer Eichas drove his marked vehicle into the parking lot and parked behind the Nissan, blocking it. (*Id.*) Officer Eichas testified that he began to walk towards the driver's side of the Nissan to ensure that no one entered the vehicle to drive it away while another officer approached Defendant from the passenger side of the Nissan. (*Id.*) Officer Eichas further testified that at this time, the car was running[2], both the front windows and the back driver's side window were fully down, and the rear passenger side window was three or four inches up, and loud music was emanating from the vehicle. (*Id.*) When Officer Eichas approached Defendant he said, "Hey Jimmy, put your hands up," and signaled to Defendant by putting his own hands up. (*Id.*) Defendant began to walk towards the rear of the vehicle on the passenger side with his hands up, but then fled from the officers. (*Id.*) When he fled, Defendant left the car running, the keys in the ignition, both front windows and the back driver's side window were fully down and the rear passenger side window was three to four inches up, and loud music was playing from the car. (*Id.*) Officers apprehended Defendant after a brief foot chase and took him into custody. (*Id.*) After obtaining a search warrant for the Nissan, law enforcement found the "Gucci"

---

[1] During oral argument there was some confusion regarding the exact brand name of the bag allegedly containing the gun. However, that is not relevant for the purpose of this Report and Recommendation and, therefore, the undersigned will refer to it as the "Gucci" bag.

[2] Officer Eichas testified that he knew the vehicle was running because he could see the hood of the car moving a little and also knew it was running based upon his general familiarity with vehicles.

3

bag on the floor behind the front passenger seat, which contained a Taurus model G3X, 9mm pistol and two ammunition magazines. (Van Alstyne Aff ¶ 7.)

### *Counsels' Arguments*

Defendant contends that he has standing to challenge the search of the blue Nissan Sentra as he "had Ms. McFadden's lawful permission to use and possess that vehicle." (Anzalone Aff. ¶ 11, ECF No. 26.) In support of this argument Jennifer McFadden submitted an affidavit in which she affirmed that she is the owner of the Nissan Sentra and that on August 2, 2022, she gave Defendant permission to use that vehicle. (*Id.* at Ex. A (McFadden Aff. ¶¶ 1–2), ECF No. 26-1.) For this reason, Defendant asserts that he had a reasonable expectation of privacy with respect to that vehicle and its contents.

The government contends that Defendant abandoned the vehicle and therefore relinquished any privacy interest he may have had with respect to that vehicle. More specifically, the government asserts that Defendant lacks standing to challenge the search of the vehicle because when law enforcement approached him in the parking lot of a store, he ran away from the vehicle and the police, leaving the vehicle running, the windows open, the keys in the ignition, and no one else in the vehicle. (Gov't Resp. at 4–5, ECF No. 30.)

### *Conclusions of Law Regarding Defendant's Standing.*

Fourth Amendment rights attach only to places and things in which the individual challenging the search has "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (citation omitted); *see, e.g., Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). "It has been clear for a generation that 'Fourth Amendment rights are personal rights that may not be vicariously asserted.'" *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (alterations omitted) (quoting *Rakas*, 439 U.S. at 133–34); *see, e.g.,*

4

*United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). "In evaluating [standing] claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized." *Id*. at 40.

The burden is on the defendant to show that he has a reasonable expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see also United States v. Cruz*, 475 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) ("The burden of establishing the existence of a reasonable expectation of privacy rests on the defendant."). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Sykes*, No. 05-CR-6057T, 2006 WL 2265309, at *9 (W.D.N.Y. Jul. 31, 2006), *report and recommendation adopted*, No. 05-CR-6057, 2006 WL 2711460 (W.D.N.Y. Sept. 20, 2006) (citation omitted).

Finally, while the Fourth Amendment guarantees protection against unreasonable searches and seizures, "[w]hen a person voluntarily abandons property, . . . he forfeits any reasonable expectation of privacy that he might have had in the property." *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990) (citing *United States v. Levasseur*, 816 F.2d 37, 44 (2d Cir. 1987)). Accordingly, the protections of the Fourth Amendment do not extend to abandoned property. *Id*. (citing *United States v. Moskowitz*, 883 F.2d 1142, 1147 (2d Cir. 1989)).

In support of its assertion that Defendant lacks standing to challenge the search of the vehicle because he abandoned it, the government cites to *United States v. Libbett*, No. 05-CR-6069L, 2006 WL 2620049, at *10 (W.D.N.Y. Sept. 13, 2006), in which the Honorable David G. Larimer adopted the Report and Recommendation of the Honorable Marion W. Payson. The government contends that *Libbett* involved a similar situation and urges the Court to adopt its reasoning.

In *Libbett* a police officer observed the defendant and another occupant "jumping around" in a vehicle that the officer suspected may have been stolen and decided to follow the vehicle after it left a gas station. *Id*. at *3. The officer observed the defendant driving through two stop signs and failing to come to a complete stop at each. *Id*. Thereafter the officer saw the defendant driving the vehicle erratically and then come to a stop in the road in front of a residence whereafter the defendant left the vehicle and fled on foot leaving the vehicle running and the driver's side door open. *Id*. Judge Payson found that the defendant abandoned the vehicle and any privacy interest he may have had in it when he fled from the police leaving the vehicle running and the driver's side door open. *Id*. at *10. Judge Larimer agreed with this conclusion.

The undersigned agrees that the *Libbett* case supports a finding that Defendant abandoned the Nissan Sentra when he fled, leaving it running with the windows down, the keys in the ignition, and with no other occupant. By abandoning the vehicle Defendant forfeited any reasonable expectation of privacy he may have had in the vehicle and its contents and, accordingly, lacks standing to challenge the search of the vehicle. *See United States v. Smith,* 648 F.3d 654, 660 (8th Cir. Aug. 5, 2011) (holding that a defendant abandoned his car when he left it open in a public area, with the keys in the ignition and the motor running, as he fled on foot from the police); *United States v. Vasquez,* 635 F.3d 889, 892, 894 (7th Cir. 2011) (concluding that a defendant abandoned his car when he left it in a Walmart parking lot before fleeing on foot from the police); *United States v. Kirlew*, 291 F. App'x 536, 538–39 (4th Cir. Sept. 5, 2008) (defendant abandoned his vehicle, and thus could not object to search of locked trunk, because he jumped out while car was still moving and ran away leaving engine running); *United States v. Lynch*, 290 F. Supp. 2d 490, 497 (M.D. Pa. 2003), *aff'd*, 214 F. App'x 248 (3d Cir. 2007) (concluding that search was lawful because defendant abandoned his vehicle by "flee[ing] the car on foot, leaving the door wide open and the motor and headlights running" while "police officers in police cars looked on."); *United States v. Knaub*, No. 95-30153, 1996 WL 146690, at *1 (9th Cir. Apr. 1, 1996)

(defendant lacked standing to challenge search of glove compartment because he fled vehicle leaving motor running and doors open); *United States v. Clarke*, No. 92 CR. 1138 (SS), 1993 WL 478374, at *2 (S.D.N.Y. Nov. 12, 1993) ("defendants' flight from their vehicle after very brief valid questioning constituted a voluntary abandonment, not coercion, and the ensuing search of the vehicle was lawful.").

The fact that Defendant apparently had permission to drive the vehicle does not change the conclusion that once he abandoned it, he forfeited any privacy interest he may have possessed for purposes of the Fourth Amendment. For these reasons the undersigned recommends that the District Judge deny Defendant's motion to suppress any evidence, including the gun, found inside of the vehicle.[3]

## CONCLUSION

Based upon the forgoing, the undersigned recommends that the District Court:
a. deny that aspect of Defendant's motion seeking to suppress tangible evidence; and

b. denying that aspect of Defendant's motion seeking a *Franks* hearing.

(ECF No. 26.)

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby:

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the

---

[3] As the undersigned believes Defendant lacks standing in the first instance to challenge the search of the vehicle and seizure of the items found therein, the undersigned does not need to reach Defendant's other arguments and, accordingly recommends that the District Court deny them, including Defendant's request for a *Franks* hearing.

magistrate judge in the first instance. *See, e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED: September 27, 2023
Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge

8