UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

Plaintiff,

**DECISION AND ORDER**

-vs-

23-CR-6089 CJS/MWP

JIMMY L. HARRIS, JR.,

Defendant.

---

This case was referred by text order of the undersigned, entered April 27, 2023 to Magistrate Judge Mark W. Pedersen, pursuant to 28 U.S.C. § 636(b)(1)(A)–(B), ECF No. 24. On June 30, 2023, Defendant filed an omnibus motion, ECF No. 26, seeking *inter alia*, suppression of tangible evidence seized, pursuant to a search warrant, on August 2, 2022, from a blue Nissan Sentra ("Nissan"), bearing New York State license plate KUU2476. Defendant maintained that he was entitled to suppression based upon the following: The seizure of Defendant without probable cause or reasonable suspicion; the warrantless seizure of the Nissan; the seizure and search of the Nissan prior to the issuance of the search warrant; an allegedly false statement contained in the search warrant application, or alternatively a *Franks* hearing with respect to the search warrant application.

By text order entered on September 14, 2023, ECF No. 37, Magistrate Judge Pedersen ordered limited evidentiary hearing "regarding the Government's assertion that Defendant fled the Nissan leaving it running, with the windows open, and the keys in the ignition." On September 27, 2023, ECF No. 39, such limited evidentiary hearing was held as it related to Defendant's application to suppress tangible evidence. Also on September

27th, Magistrate Judge Pedersen filed a Report and Recommendation ("R&R"), ECF No. 40, recommending that Defendant's motion to suppress tangible evidence be denied, based upon his finding that the Defendant lacked standing to object to the seizure and search of the Nissan, since he had abandoned the vehicle.

On November 6, 2023, Defendant timely filed objections to the R&R, ECF No. 56. Specifically, Defendant maintains that:

1) The Magistrate Judge erred in failing to conduct a full evidentiary hearing;

2) The Magistrate Judge erred in finding Mr. Harris lacked standing to challenge the search of the Nissan Sentra and the seizure of the firearm and ammunition;

3) The Magistrate Judge erred in failing to find that the firearm and ammunition that was recovered as a result of this illegal stop and arrest should have been suppressed as a fruit of the illegal arrest;

4) The Magistrate Judge erred in his credibilty finding regarding Officer Eichas and accordingly erred in denying the defendant's request for a *Franks* Hearing.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the R&R to which objections have been made. In that regard, the Court has reviewed the R&R, along with the transcript of the September 27, 2023 evidentiary hearing, ECF No. 59, as well as the store surveillance recording received into evidence as defense Exhbit 1A. Upon such *de novo* review, the Court accepts Magistrate Judge Pedersen's  proposed findings and recommendation.

With respect to Defendant's objection to the scope of the evidentiary hearing, the Court finds such objection to be without merit. See *United States v. Pettway*, 2017 WL 2963995, at *1 (W.D.N.Y. July 12, 2017) ("The evidentiary hearing was limited in scope to

the issue of whether the defendant had been given his Miranda warnings"). In the case at bar, Magistrate Judge Pedersen properly determined that should the issue of standing be resolved in the Government's favor, as it ultimately was, such determination would be dispositive of Defendant's motion to suppress evidence.

As to Defendant's contention that Magistrate Judge Pedersen erred in failing to find that the firearm and ammunition at issue were seized as a result of this illegal stop and arrest, the Court disagrees. At the September 27th evidentiary hearing, Rochester Police Officer Shawn Eichas testified as follows:

> Q. What, if anything, did you observe at about that time and location?
>
> A. I observed a blue Nissan Sentra that had caught my attention. I had some previous knowledge of a blue Nissan Sentra that was likely involved in a shooting investigation.
>
> Q. All right. And how did you know -- you said a blue Nissan Sentra. How did you know that that was the blue Nissan Sentra that was in the information you had received?
>
> A. I -- on the information I received, there was a license plate that was also provided on that bulletin and I observed it on the same Nissan Sentra that I saw.
>
> Q. Do you remember that license plate number as you sit here today?
>
> A. KUU-2476.
>
> Q. Okay. That blue Nissan Sentra KUU-2476, I think you started saying you observed it. Can you tell the Court what you observed?
>
> A. So I was traveling on Avenue D and I observed the same vehicle traveling eastbound on Avenue D, stopped at the red light at Hudson Avenue so just prior to Hudson Avenue.
>
> Q. At that point could you see who the driver was?

A.   Yes.

Q.   Okay. Did you know who the driver was?

A.   I did.

Q.   How so?

A.   Based on the same bulletin that we received, there
     was a possible suspect involved who was known to drive that
     same vehicle.

Q.   All right. And was there a photograph that person
     in the bulletin?

A.   Yes, there was.

Q.   Was there a photograph of that car in the bulletin?

A.   Yes, there was.

Q.   Who was the person listed as the suspect in that
     bulletin you referred to?

A.   Jimmy Harris.

Q.   Did you do anything else to find out any information
     about Mr. Harris or the vehicle when you observed it?

A.   Prior to observing it on that day, I had prior knowledge
     that Mr. Harris had a revoked license and that was
     just part of my investigation prior to observing it that day
     so I could check what his driver status was.

Transcript of September 27, 2023 Evidentiary Hearing, ECF No. 59, p. 12, line 5 to p. 12,

line 22. The Court considers this testimony in light of two cases. The first is: *United States*

*v. Hensley*, 469 U.S. 221 (1985) where the Supreme Court advised:

> We conclude that, if a flyer or bulletin has been issued on the basis of
> articulable facts supporting a reasonable suspicion that the wanted person
> has committed an offense, then reliance on that flyer or bulletin justifies
> a stop to check identification, see *United States ex rel. Kirby v. Sturges,*
> 510 F.2d 397, 400–401 (CA7) (Stevens, J.), cert. denied, 421 U.S. 1016,

95 S.Ct. 2424, 44 L.Ed.2d 685 (1975), to pose questions to the person, or to detain the person briefly while attempting to obtain further information. See *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time").

*Id.* at 232. The second case is *United States v. Colon*, 250 F.3d 130 (2d Cir. 2001) where the Second Circuit held:

Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. See *United States v. Hensley*, 469 U.S. 221, 230–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *United States v. Canieso*, 470 F.2d 1224, 1230 n. 7 (2d Cir.1972). "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez*, 796 F.2d 24, 28 (2d Cir.1986).

*Id.* at 135.

The Court concludes that based upon the applicable law, reasonable suspicion existed to detain Defendant.

Moreover, the Court, takes judicial notice of New York Vehicle and Traffic Law § 511 (1) and finds that in light of Officer Eichas' testimony that he had prior knowledge that Defendant's license was revoked, probable cause existed to arrest Defendant for the crime of Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree.

In any event, the Court finds that based upon its review of the hearing testimony of Officer Eichas and the video recording, Exhibit 1A, even assuming *arguendo* an absence

Page 5 of 9

of probable cause to arrest or reasonable suspicion to detain, the police conduct did not

violate the Fourth Amendment, since Defendant was not seized until after he abandoned

the Nissan and fled. As the Second Circuit explained in *United States v. Hightower*, 387 F.

App'x 118 (2d Cir. 2010):

> [T]o comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission." Id. at 218 (internal quotation marks omitted). Although appellant did momentarily stop when approached by the responding officers, "[a] reasonable person standing in [Hightower's] place would have felt bound to stop, and having stopped and stayed, would be able to argue suppression on the  ground of a baseless seizure." Id. at 219. However, Hightower fled and is, therefore, not entitled to have the evidence at issue suppressed. See *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir.2000).

*Id.* at pp. 119-120.

Regarding Defendant's contention that Magistrate Judge Pedersen erred in his

credibility finding as to Officer Eichas, the Court again disagrees. On this point, the Court

finds instructive the following:

> In conducting its de novo review, the district court must give appropriate deference to the credibility determinations made by the magistrate judge who conducted an evidentiary hearing and observed the witness testimony. See *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings."); *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) ("The district court, however, may not reject the magistrate judge's credibility findings without conducting an evidentiary hearing at which the district court has the opportunity to observe and evaluate witness credibility in the first instance.").

*United States v. Guobadia*, 2019 WL 1593922, at *2–3 (W.D.N.Y. 2019); see also *United States v. Preston*, 635 Fed. Supp. 2d 267 (W.D.N.Y. 2005). Here, like the *Guobadia* case, the Court accepts Magistrate Judge Pedersen's credibility findings.

Turning now to the question of standing, the Court agrees with Magistrate Judge Pedersen that Defendant lacks standing to contest the search of the Nissan in which the firearm and ammunition at issue were discovered, since he abandoned the vehicle. In *United States v. Sullay*, 585 F. Supp. 3d 110 (D. Mass. 2022), the District Court of Massachusetts summarized the law on abandonment:

> To challenge a search or seizure, "a defendant must have a reasonable expectation of privacy in the area searched or the item seized." *United States v. Bailey*, 2009 WL 524730, at *2 (D. Mass. Feb. 26, 2009). Such expectation, however, "may be forfeited by voluntary acts of abandonment." *United States v. Wilkins,* 451 F. Supp. 3d 222, 227 (D. Mass. 2020); see Bailey, 2009 WL 524730, at *2 (noting that "[i]t is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property"). To demonstrate abandonment, the Government must "establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *Bailey*, 2009 WL 524730, at *2 (internal quotations omitted). Courts "look at the totality of the circumstances" when conducting this assessment, "but pay particular attention to explicit denials of ownership and to any physical relinquishment of property." Id. (internal quotation omitted); see California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

*Id.* at p.13. In an analogous case, *United States v. Smith*, 648 F.3d 654 (8th Cir. 2011), the Eighth Circuit held:

> We also reject Smith's assertion the district court clearly erred in finding Smith abandoned the Cadillac in the Taco Bell drive-through lane when he fled on foot. "A warrantless search of abandoned property does not implicate the Fourth Amendment, [because] any expectation of privacy in the item searched is forfeited upon its abandonment." *James*, 534 F.3d at

873 (quoting *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir.1997)). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his] reasonable expectation of privacy so that the search and seizure is valid." *United States v. Hoey*, 983 F.2d 890, 892–93 (8th Cir.1993).

In a factually similar case, we held the warrantless search of a suspected bank robber's vehicle, left parked on a public street, unlocked, with the windows down as the robber fled the police, did not violate any Fourth Amendment right of the suspected bank robber. See *United States v. Walton*, 538 F.2d 1348, 1351, 1354 (8th Cir.1976).
See also *United States v. Vasquez,* 635 F.3d 889, 892, 894 (7th Cir.2011) (concluding defendant had no expectation of privacy in his vehicle after fleeing from police and abandoning the vehicle in a Wal–Mart parking lot before continuing his flight on foot); *United States v. Edwards,* 441 F.2d 749, 751 (5th Cir.1971) ("Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot. At that point defendant could have no reasonable expectation of privacy with respect to his automobile.").

Relying on Walton and similar cases, the district court determined Smith abandoned the Cadillac "when he left the car open, with the keys in the ignition, the motor running, in a public area" and then ran from the police. Based on the totality of the circumstances, the district court did not err in concluding Smith relinquished any legitimate expectation of privacy he might have had in the Cadillac and its contents. As such, the district court properly denied Smith's motions to suppress.

Here as can be seen on Exhibit 1A, Officer Eichas, as well as the other officers at the scene, were in uniform, driving marked police vehicles. Further, the Court accepts the testimony of Officer Eichas that he said, "Jimmy, stop," but that Defendant responded by fleeing from the police (as can also be seen on Exhibit 1A) , leaving the Nissan's engine running, all of the vehicle's windows down, and loud music coming from the car. Accordingly, the Court finds by a preponderance of the evidence, based upon the totality of circumstances, that Defendant relinquished any expectation of privacy with respect to the Nissan.

Therefore, based upon the above, and for the reasons set forth in Magistrate Judge Pedersen's R&R., ECF No. 40, Defendant's application to suppress tangible evidence, ECF No. 26, is  denied.[1]

IT IS SO ORDERED.

Dated:   Rochester, New York
         February 8,  2024

ENTER:

/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge

---

[1] Having agreed with Magistrate Judge Pedersen and found upon *de novo* review that Defendant lacked standing to contest the search of the Nissan and the seizure of the handgun and ammunition, the Court need not address Defendant's objection as to a *Franks* Hearing.